IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ENERGY, LP., an Idaho Limited partnership, dba ENERGY PRODUCTS OF IDAHO, <br><br> Plaintiff, <br><br> vs. <br><br> HARRIS CONTRACTING COMPANY, ALLIANT ENERGY CORPORATE SERVICES, INC., VON ROLL, INC., <br><br> Defendants. | Case No. CV07-423-N-EJL <br><br> MEMORANDUM ORDER |

Pending before the Court in the above-entitled matter is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 28). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

Plaintiff Idaho Energy LP, an Idaho limited partnership doing business as Energy Products of Idaho ("EPI") filed its Complaint for Declaratory Relief on October 8, 2007 (Docket No. 1). EPI designs, manufactures and sells fluidzied bed energy systems.

Defendants Harris Contracting Company ("Harris"), Alliant Energy Corporate Services ("Alliant") an Von Roll, Inc. ("Von Roll") are the co-holders of U.S. Patent no. 7,263,934 ('934 Patent") entitled "Methods for Generating Energy Using Agricultural Biofuel." The patent was a result of U.S. Patent Application Serial No. 10/373668 which

had been filed in 2003 ("Patent Application '668"). Plaintiff maintains the scope of the patent issued was narrower than the patent application.

Defendant Harris is in the commercial construction business and constructs, among other things, ethanol plants and installs fluidized bed energy systems. Harris is a corporation incorporated under the laws of Minnesota and its principal place of business is St. Paul, Minnesota. Alliant is in the energy business and consults with ethanol producers on matters such as the use of fluidized bed energy systems for use at ethanol plants. Alliant is an Iowa corporation and its principal place of business is Cedar Rapids, Iowa. Defendant Von Roll designs, manufactures, and sells fluidized bed energy systems. Von Roll is a Georgia corporation and its principal place of business is Norcross, Georgia.

In January 2007, Rob Latta, a Harris employee, attended a presentation given by EPI at the Renewable Fuels National Conference in Tucson, Arizona. At that presentation, Mr. Latta spoke with EPI representative Kent Pope regarding the pending patent application based on similar technology as being discussed by EPI and indicated Mr. Pope should not discuss maters related to the patent application. Plaintiff maintains that Mr. Latta indicated a patent had issued when in fact such patent was not issued until September 2007.

In June 2007, Mr. Latta attended the Fuel Ethanol Workshop & Expo in St. Louis, Missouri. Mr. Latta gave a presentation on Fluid Bed Applications at Dry Mill Ethanol Plants. Mr. Pope was also on the panel and gave a presentation including information about EPI's on-going research regarding processes for generating energy from agricultural biofuel. Mr. Latta again reminded Mr. Pope of the pending patent application by Harris, Alliant and Von Roll and indicated that Mr. Pope should not discuss related matters to the pending patent application. Plaintiff maintains that Mr. Latta indicated a patent had issued when in fact such patent was not issued until September 2007.

In April 2007, Plaintiff alleges that United Wisconsin Grain Producers ("UWGP"), an ethanol producer and potential customer of EPI, hired Alliant as a consultant. A representative of UWGP states in his declaration that agents of Alliant represented that a

patent had issued (when it had not yet issued) and stated that UWGP must purchase the fluidized bed boiler from Von Roll or there could be "legal ramifications."

Plaintiff also alleges agents of the Defendants, specifically Alliant, represented in July of 2007 that a patent had been issued when it was meeting with potential customers Ace Ethanol ("Ace") and Innovation Bio Technologies ("IBT"). Ace and IBT are not located in Idaho. Plaintiff further alleges Alliant threatened a lawsuit against Ace and IBT if they used EPI's equipment and did not have a license from Alliant.

In July 2007, prior to the issuance of '934 patent, Defendant Harris sent a letter to EPI indicating that based on Harris' understanding of the work EPI was doing in the biofuel field, EPI may require a license to the patent application that became the '934 Patent if the EPI research was commercialized. On August 9, 2007, EPI indicated its interest in pursuing license with Harris.

Plaintiff alleges in the First Amended Complaint, paragraph 21, that in mid-August of 2007, Alliant contacted EPI indicating that a potential customer, UWGP was interested in pursuing EPI as a supplier of a fluidized bed energy system. Alliant claimed the patent had issued and that Alliant's position was that a licensing agreement with Alliant would be necessary for EPI to sell its fluidized bed energy system to UWGP.

On or about August 27, 2007, UWGP contacted EPI and revealed Alliant and Von Roll had told UWGP they had a patent and that there could be legal problems if it used EPI's equipment. UWGP indicated it wanted to use EPI's fluidized bed energy system, but it wanted to be sure there would be no legal ramifications in doing so.

On August 29, 2007, EPI changed its position and sent Harris a letter accusing Harris of patent misuse, unfair competition and tortious interference. Harris forwarded the letter from EPI to Alliant who responded on August 31, 2007 to the claim of patent misuse.

Then on September 12, 2007 after '934 Patent had issued on September 4, 2007, EPI again requested a draft license agreement. Also on September 12, 2007, Harris responded to EPI's August 29th and September 12th letters and denied that Harris had engaged in any unfair competition or patent misuse. Harris asked EPI to clarify whether they were

interested in negotiating a license agreement. On September 25, 2007, EPI responded to Harris that it was interested in the option of a license agreement. On October 8, 2007, EPI and Harris had a telephone conference call regarding a possible technology agreement related to '934 Patent. Also on October 8, 2007, EPI filed the current lawsuit against the Defendant. In the lawsuit, EPI alleges one or more of the claims of the '934 Patent are invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103 and/or 112. Plaintiff denies that it is now or has ever been or will ever be "required" to obtain any license from Defendants under '934 Patent based on any product or service that Plaintiff has offered or sold, is offering or selling or will offer or sell in the future. See First Amended Complaint, Docket No. 22, p.12 ¶ 36. EPI also alleges the Defendants improperly represented to EPI and potential customers that a patent had been issued, when the patent had not issued but a patent application was pending. These alleged facts are disputed by Defendants, but for purposes of the motion to dismiss will be treated as true.

In the First Amended Complaint, Plaintiff raises seven claims for relief: declaratory judgment for patent invalidity, business defamation, interference with prospective economic advantage, trade libel, unfair competition, violation of the Lanham Act, and conspiracy. Defendants move to dismiss the First Amended Complaint alleging a lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief may be granted. Plaintiff opposes the motion to dismiss.

## Analysis

A motion to dismiss should not be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Clegg v. Cult Awareness Network, 18 F. 3d 752, 754 (9th Cir. 1994). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. See Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992).

1. Delcaratory Judgment claim in Count 1

Defendants maintain that the declaratory judgment claim for patent invalidity must be dismissed as this Court lacks subject matter jurisdiction over the claim, and alternatively, the Court should not exercise discretionary jurisdiction over the claim. Additionally, Defendants argue the Court lacks personal jurisdiction over the Defendants. The Court will address each argument.

A. Subject Matter Jurisdiction - Rule 12(b)(1)

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) in one of two ways. See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. Id. On the other hand, the defendant may instead launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." Id. A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989); Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill, 594 F.2d at 733.

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction [pursuant to a "factual attack"] ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). "When a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction, rather than for failure to state a claim, is proper only when the allegations of the complaint are frivolous." Id. In such a case, "the jurisdictional determination should await

a determination of the relevant facts on either a motion going to the merits or at trial." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought." In the case of declaratory judgments for patent infringement or validity, Federal Circuit law governs whether an actual controversy exists. Microchip Tech. Inc, v. Chamberlain Group, Inc., 441 F.3d 936, 940 (Fed. Cir. 2006). Declaratory judgment actions are allowed for patent invalidity claims as a party should not have to wait to be sued for infringement in order to seek relief:

> [W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed.Cir. 2007)

Plaintiff bears the burden of proving that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 125 (2007).

In MedImmune, the Supreme Court rejected the "reasonable apprehension" part of the two part test set forth in Teva Pahmaceuticals USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1330 (Fed. Cir. 2005) and substituted the above legal standard for the first part of the two part test. The Supreme Court did not overrule the second part of the test, so the Federal Circuit has interpreted that the second part remains applicable:   there must be present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity." Teva, at 1330; SanDisk Corp. v. STMicroelectronis NV, 480 F3d 1372 (Fed, Cir. 2007).

In this case Defendants maintain that EPI has not identified specific, ongoing or planned activity that would violate '934 Patent, so there is no underlying legal cause of action the declaratory defendant could have brought or threatened to bring. Assuming the alleged facts as true for purposes of this motion to dismiss, the Defendants have not threatened legal action against EPI in various ways. Plaintiff maintains that the past threats of litigation to potential customers and to EPI's agents at industry conventions combined with the communications from Defendants Alliant and Harris that a license agreement is required for EPI to sell fluidized bed energy systems to UWGP supports a belief by EPI that adverse legal issues exist that must be addressed. Plaintiff argues such issues need to be addressed for the sake of EPI, fluidized bed energy system customers and potential customers and for the Defendants to be able enforce '934 Patent.

The Court agrees with Plaintiff that subject matter jurisdiction can exist even though the Defendant has not threatened to sue since the issuance of the patent. Teva at 1340. Also informing a potential customer of a patent violation suffices for jurisdiction. Massa v. Jiffy Products Co., 240 F.2d 702, 705 (9th Cir. 1957).

In applying the MedImmune standard to the facts of this case, the Court finds that Plaintiff has carried its burden in establishing that under all of the circumstances set forth in the First Amended Complaint, there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Further, the Court also finds that the second part of the test has been satisfied in that EPI designs, manufactures and installs fluidized bed energy systems that arguably could fall under '934 Patent since Defendants have told EPI that they need a license agreement to sell to UWGP and the EPI continues to develop new methods of burning biofuel that could be infringe '934 Patent. Clearly, there are "concrete steps" being taken by EPI to establish the intent to conduct infringement activity.

For these reasons, the Court finds under all the circumstances presented in the First Amended Complaint, a case or controversy exists under the Declaratory Judgment Act and that subject matter has been established by Plaintiff.

### B. Discretionary Exercise of Declaratory Judgement Jurisdiction

The Court acknowledges that even if an actual controversy exists, the Court has the discretion to decline to exercise jurisdiction. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). There are two criteria the Court should consider in determining whether to exercise its discretion to issue a declaratory judgment: 1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations at issue; and 2) whether the judgment will terminate and afford relief from uncertainty, insecurity and controveresy giving rise to the proceeding. Erbamont, Inc. v. Cetus Corp., 720 F. Supp. 387, 392 (D. Del. 1989). In reviewing the record in this matter and for the reasons discussed above on the uncertainty of the legal position of national competitors EPI and Von Roll, the Court finds it should not decline subject matter jurisdiction over this controversy as both criteria have been satisfied by EPI's allegations.

### C. Personal Jurisdiction

Having found subject matter jurisdiction exists on the declaratory judgment claim and that the Court will not decline discretionary subject matter jurisdiction, the Court must next determine if personal jurisdiction over the Defendants exists. Personal jurisdiction over both parties is required before a court may decide a case in controversy. U.S. CONST. AMEND. XIV. Federal Courts must apply Federal Circuit law in determining personal jurisdiction in a patent case. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 428 (Fed. Cir. 1996). Plaintiff has the burden to demonstrate jurisdiction is appropriate. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

There are two types of personal jurisdiction - general and specific. Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987). General jurisdiction is exercised by a state when personal

jurisdiction is asserted over a "defendant in a suit not arising out of or related to the defendant's contacts with the forum." Helicoptores Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 n. 9 (1984).  This occurs when the defendant has "substantial" or "continuous and systematic" contacts with the state to the extent that these contacts approximate physical presence.  Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082 (9th Cir. 2000).  It appears that Plaintiff EPI concedes and the Court agrees that the Defendants contacts with Idaho have not been "continuous and systematic" to establish general jurisdiction.  None of the Defendants have a presence in Idaho.  While Harris has registered to do business in Idaho, the Plaintiff has not provided any evidence of Harris conducting any business in Idaho.  Therefore, the Court will determine if specific jurisdiction exists over the Defendants.

As there is not a federal statute governing personal jurisdiction in this case, Idaho law applies.  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  In order for an Idaho court to exert jurisdiction over an out-of-state defendant, the Supreme Court of Idaho has imposed a two-part test.  Smalley v. Kaiser, 130 Idaho 909, 912, 950 P.2d 1248, 1251 (1997).  First, the act giving rise to the cause of action must fall within Idaho's long-arm statute and second, the constitutional standards of due process must be met.  Id.

Idaho's long-arm statute grants jurisdiction to Idaho courts over causes of action which arise from, among other things: "[t]he transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective...;" and "[t]he commission of a tortious act within this state."  IDAHO CODE § 5-514(a), (b).  In adopting § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.  Houghland Farms, Inc. v. Johnson, 119 Idaho 72, 75, 803 P.2d 978, 981 (1990).  Thus, the inquiry is the same under both Idaho's long-arm statute and the federal due process clause and the Court need only decide whether asserting personal jurisdiction complies with due process.  Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987).

Specific jurisdiction is exercised by a state when it asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state. Helicoptores v. Hall, 466 U.S. 408, 414 n. 8 (1984). Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of or relates to* the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

Id. (emphasis added.) See also Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995). The Ninth Circuit has also noted that these "contacts" requirements can be lessened if considerations of reasonableness so demand. Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).

The first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or on account of the unilateral activity of third parties. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in Ninth Circuit case law. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). A purposeful availment analysis is more often used in suits involving contracts, whereas a purposeful direction analysis is used in suits involving torts. Id. The parties agree that the nature of this litigation is based in tort rather than contract, so the Court will apply the "purposeful direction" analysis.

Purposeful direction requires a finding that the defendant's actions outside the forum state are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. Schwarzenegger v. Fred Martin Motor Corp., 374 F.3d 797, 803 (9th Cir. 2004).

In <u>Dole Food Co. v. Watts</u>, the Ninth Circuit applied the "effects" test for intentional torts. 303 F.3d 1104, 1111 (9th Cir. 2002). This test requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. <u>Id.</u>

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment or direction be the ones that give rise to the lawsuit. <u>Id.</u> at 1088. The Ninth Circuit measures this in terms of "but for" causation, that is, personal jurisdiction is proper only where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred. <u>Id.</u> This preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

The third and final requirement is that the exercise of personal jurisdiction be reasonable and comport with the notions of fair play and substantial justice. <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000). The burden is on the defendant to demonstrate unreasonableness. <u>Id.</u> The reasonableness determination requires a court to look at seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. <u>Id.</u>

The Court will begin with the "purposeful direction" analysis which the parties agree requires the application of the three part "effects test" which derives from <u>Calder v. Jones</u>, 465 U.S. 783, 787-89 (1984) and is set forth above. In this case, it is undisputed for purposes of the motion to dismiss that Defendants allegedly committed an intentional act or acts, however, the second part of the test – whether or not the intentional act or acts were "expressly aimed at the forum state" is contested. In <u>Nonpareil Corp. v. Reddy Raw, Inc.</u>, slip opinion, 2008 WL 711037, p.6 (D. Idaho 2008) (citing <u>Bancroft</u>, 223 F.3d at 1087) this Court held that <u>Calder</u> "'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum

state always gives rise to specific jurisdiction. We have said there must be 'something more.'" Stated another way, Plaintiff must allege something more that the mere fact it felt an effect from Defendants' allegedly tortious conduct which occurred outside Idaho. While it is true the actions of Defendants had the foreseeable impact of effecting EPI's business, the actions were not expressly aimed at Idaho and there was not "something more."

While it is undisputed that Harris is registered to do business in Idaho, there is no allegation in the First Amended Complaint or evidence of Harris actually conducting business in Idaho and mere authority to do business is insufficient to establish personal jurisdiction over Harris since such authority to do business has nothing to do with EPI or '934 Patent.

Furthermore, any alleged improper or defamatory statements made to potential customers by Alliant and Harris did not involve potential customers in Idaho and were not directed toward Idaho. See Casualty Assur. Risk Ins. Brokerage Co. v. Dillon, 976 F2d 596, 599-600 (9th Cir. 1992). Additionally, the Defendant is correct that sending letters that threaten infringement litigation or indicate a need for a license agreement are insufficient to confer personal jurisdiction, "without more." Red Wing Shoe Co. v. Hackerson-Halberstadt, Inc., 148 F.3d 1355, 1359-60 (Fed. Cir. 1998). There are simply no allegations that the letters were coupled with other actions by Defendants expressly directed to Idaho -- only allegations that the Defendants Alliant and Harris notified EPI of their belief a license agreement was necessary. Plaintiff has failed to carry its burden on this prong of the "effects test," so the Court need not address the third prong of the "effects test." This ends specific personal jurisdiction analysis on this declaratory judgment claim and the claim must be dismissed without prejudice.

In the alternative, the Court would reach the same result of dismissal of this claim even if there was specific jurisdiction over Alliant and Harris. There has been no showing Defendant Von Roll directed any tortious acts towards Idaho. It appears from the facts alleged by Plaintiff that it was the agents of Harris and Alliant who allegedly improperly represented the status of the pending patent application and discussed the need for a license agreement if potential customers used EPI's equipment.. Von Roll is an indispensable party to a patent

action since it is a co-owner of '934 Patent and the fact there is no specific jurisdiction over Von Roll arguably destroys jurisdiction over the other two Defendants (assuming that the Court found personal jurisdiction over Alliant and Harris) for all three Defendants. IpVenure, Inc. v. Prostar Computer, Inc., 503 F.3d 1324, 1325 (Fed. Cir. 2007).

2. Counts 2 -7, the Non-Declaratory Judgment Claims

Because personal jurisdiction does not exist over Defendants for Count 1, the Court also finds it lacks personal jurisdiction over the remaining non-declaratory judgment claims as such claims must also be dismissed without prejudice and the Court need not address the merits of the motion to dismiss pursuant to Rule 12(b)(6).

Order

Being fully advised in the premises, the Court hereby orders that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 28) is GRANTED and the matter is dismissed without prejudice to allow Plaintiff to file its claims in another jurisdiction which has personal jurisdiction over the named Defendants.

DATED: September 30, 2008.

Honorable Edward J. Lodge
U.S. District Judge